```
———— 2:13-cr-364-JAD-GWF - April 7, 2015 ————
```

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3

4  UNITED STATES OF AMERICA,        )  Case No. 2:13-cr-364-JAD-GWF
                                    )
5              Plaintiff,           )  Las Vegas, Nevada
                                    )  April 7, 2015
6        vs.                        )  10:32 a.m.
                                    )
7  CLIFFORD JAMES SCHUETT,          )  IMPOSITION OF SENTENCE
                                    )
8              Defendant.           )  **C E R T I F I E D   C O P Y**

9

10                REPORTER'S TRANSCRIPT OF PROCEEDINGS

11            BEFORE THE HONORABLE JENNIFER A. DORSEY,
                     UNITED STATES DISTRICT JUDGE

12

13

14  APPEARANCES:

15  For the Plaintiff:        PHILLIP N. SMITH, JR., AUSA
                              United States Attorney's Office
16                            333 Las Vegas Boulevard South, Suite 5000
                              Las Vegas, Nevada 89101
17                            (702) 388-6336

18  For the Defendant:        REBECCA LEVY, AFPD
                              Federal Public Defender's Office
19                            411 East Bonneville Avenue, Suite 250
                              Las Vegas, Nevada 89101
20                            (702) 388-6577

21  Probation Officer:        Tiffany Elwess

22  Court Reporter:           Felicia Rene Zabin, FCRR, RPR, CCR 478
                              United States District Court
23                            333 Las Vegas Boulevard South, Room 1334
                              Las Vegas, Nevada  89101
24

    Proceedings reported by machine shorthand, transcript produced by
25  computer-aided transcription.

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1          LAS VEGAS, NEVADA; TUESDAY, APRIL 7, 2015; 10:32 A.M.

2                              --oOo--

3                     P R O C E E D I N G S

4          COURTROOM ADMINISTRATOR:  All rise.

5          THE COURT:  Good morning.  Please have a seat.

6          COURTROOM ADMINISTRATOR:  Case No. 2:14-cr-364-JAD-GWF,

7  United States of America versus Clifford James Schuett.  This is

8  the date and time set for the imposition of sentence.

9          Counsel, if you would state your appearances, please.

10         MR. SMITH:  Good morning, Your Honor.  Phillip Smith

11 appearing on behalf of the United States.

12         THE COURT:  Good morning.

13         MS. LEVY:  Good morning, Your Honor.  Rebecca Levy for

14 the defendant.  He's present.  He's in custody, Your Honor.

15         THE COURT:  Good morning to you.

16         And good morning, Mr. Schuett.

17         THE DEFENDANT:  Good morning, sir -- uh, ma'am.

18         THE COURT:  All right, Mr. Schuett.  This is the hearing

19 set for the imposition of the sentence upon you in this case.

20         Back in December, you appeared before the Court.  You

21 entered a plea of guilty to Threat to Kill or Cause Damage by

22 Explosive.  I accepted your guilty plea and I adjudicate you

23 guilty of this charge.

24         Has everyone had a chance to review the Presentence

25 Investigation Report?

1          MR. SMITH:  Yes, ma'am.

2          MS. LEVY:  Yes, Your Honor.

3          THE COURT:  All right.

4          And, Ms. Levy, did you get a chance to review it with

5  Mr. Schuett?

6          MS. LEVY:  Yes, Your Honor.

7          THE COURT:  Any outstanding objections at this time?

8          MS. LEVY:  No, Your Honor.

9          THE COURT:  All right.  Thank you.

10          Then let's go ahead and go through the Guideline

11  calculations.

12          I'll also just back up a bit and note that this is a

13  negotiated Plea Agreement.  It's a written Plea Agreement.  It was

14  a nonbinding agreement.  Not binding on the Court; binding on the

15  parties, of course.

16          In the Plea Agreement, the parties anticipated that -- I

17  think they anticipated a level 15 based on my calculations.

18          MS. LEVY:  That's correct, Your Honor.  And we would be

19  asking for that, Your Honor.

20      (Brief pause.)

21          THE COURT:  The Government -- part of the Plea Agreement

22  was that the Government could ask for an upward adjustment under

23  3553(a) or under 4A1.3(b)(1).

24          MR. SMITH:  That's correct, Your Honor.  And, for the

25  record, I believe it actually should have been 4A1.3(a)(1), not

1  (b)(1).  That was a typo.  And, for the record, the Government is

2  going to ask for such an upward adjustment.

3          THE COURT:  And the defendant would not seek a downward

4  adjustment under 3553 or 4A1.3(b)(1).

5          So that brings us then to the Guideline calculations in

6  the --

7      (Attorney-client discussion.)

8          THE COURT:  -- PSR.  The Base Offense Level was

9  calculated at 12.  Do we agree that is accurate?

10          MR. SMITH:  Yes.

11          MS. LEVY:  Yes, Your Honor.

12          THE COURT:  All right.

13          A two-level adjustment applied because the offense

14  involved more than two threats.  It was a single threat

15  essentially against two United States federal judges.

16          Do we agree that two-level increase applies under

17  2A6.1(b)(2)(A)?

18          MR. SMITH:  Yes, Your Honor.

19          MS. LEVY:  Yes, Your Honor.

20          THE COURT:  An additional four-level increase was applied

21  under 2A6.1(b)(4)(A) because this offense resulted in substantial

22  disruption of government functions or services.  In fact, in this

23  case it was a bomb threat against two federal judges in this

24  courthouse that did result in a need to sweep and clear the

25  building.  That was a four-level increase.

1        Do we all agree that applies?

2        MS. LEVY:  Yes, Your Honor.

3        MR. SMITH:  Yes, Your Honor.

4        THE COURT:  All right.

5        I find that those both apply, paragraph 28 and 29, the

6  two-level and the four-level apply, based on the evidence and a

7  preponderance of the evidence.

8        Then that brings us to the victim-related adjustment.

9  This is the one not contemplated by the Plea Agreement.  Probation

10  applied a six-level increase because the victims were government

11  officers or employees and the offense of conviction was motivated

12  by such status and the applicable Chapter 2 Guideline is from

13  Chapter 2, Part A, Offenses Against the Person.  And so the

14  six-level increase was applied 3A1.2(b).

15        Mr. Smith, what's the Government's position on the

16  application of the six points?

17        MR. SMITH:  Your Honor, pursuant to the Plea Agreement,

18  the Government is not going to affirmatively seek that the Court

19  applies that enhancement.

20        THE COURT:  Ms. Levy, your position?

21        MS. LEVY:  Our position is the same, Your Honor.

22        THE COURT:  Okay.

23     (Brief pause.)

24        THE COURT:  All right.  Well, with the additional six,

25  the -- and I'll go back to whether I'm going to apply that or not

1    in a minute -- Probation got an Adjusted Offense Level of 24.  It

2    then applied the three-level decrease under 3E1.1(a) and (b).

3            Mr. Smith, does the Government move for that third point?

4            MR. SMITH:  Yes, ma'am.  At this point, yes.

5            THE COURT:  On what basis?

6            MR. SMITH:  The Government didn't have to prepare for

7    trial; the parties engaged in plea negotiations relatively

8    quickly; and, in fact, this case was resolved via a pre-indictment

9    plea.  So I didn't even have to present the case to the Grand

10   Jury.

11           THE COURT:  Okay.  All right.  Then I find that the full

12   three points apply under 3E1.1(a) and (b).

13           So then, when Probation applied that, they got a 21

14   because they had applied the victim-related adjustment.

15           Criminal history computation is on page 20.  Probation

16   calculated a Criminal History score of 10 which establishes a

17   Criminal History Category of V.

18           Do we agree that's accurate?

19           MS. LEVY:  Yes, Your Honor.

20           MR. SMITH:  Yes, Your Honor.

21      (Brief pause.)

22           THE COURT:  The maximum term of imprisonment on this

23   offense is 10 years; the maximum term of supervised release is

24   3 years; the maximum fine is $250,000; and the special assessment

25   of a hundred dollars is mandatory.

─── 2:13-cr-364-JAD-GWF - April 7, 2015 ───

1          Probation, because they calculated the Total Offense

2   Level to be a 21 with a Criminal History Category of V and that's

3   a range of 70 months to 87 months, is recommending the high end,

4   at 87 months.

5      (Attorney-client discussion.)

6          THE COURT:  All right.  I'm gonna reserve my Guideline

7   calculation determination till after I hear argument.

8          Mr. Smith.

9          MR. SMITH:  Your Honor, the Government is going to

10  respectfully request that the Court either apply an upward

11  departure or an upward variance pursuant to either 4A1.3(a)(1) or

12  3553 to achieve a sentence of 87 months.  The Government is

13  cognizant that the statutory maximum is 120 months.  And so,

14  therefore, I know that I can actually ask for a sentence of 120

15  months.  But I believe that a sentence of 87 months, nevertheless,

16  achieves the statutory sentencing objectives.

17          I'm asking for the upward departure based on the in- --

18  excuse me -- the inadequacy of Criminal History Category because,

19  as the Court very well knows, the PSR calculated Mr. Schuett's

20  Criminal History Category at V.  I submit that that

21  substantially --

22          THE COURT:  Understates?

23          MR. SMITH:  -- understates his criminal history given

24  that Mr. Schuett has, by my count, a total of 10 -- I repeat -- 10

25  separate felony convictions that didn't even register any Criminal

1  History points.  He also has a misdemeanor conviction that did not

2  result in any Criminal History points.

3       So we have a total of 11 convictions, 10 of them very

4  serious offenses, where he did not get any Criminal History

5  points.  To the extent that if he had received Criminal History

6  points for even one of those convictions, he would likely be in a

7  Criminal History Category of VI.

8       Mr. Schuett's Criminal History Category is predicated on

9  only two felony convictions and one misdemeanor conviction.  So

10 that is approximately, by my count, a little bit over 10 percent

11 of his entire criminal history is actually being counted towards

12 his Criminal History Category.  So, to that extent, I believe that

13 that satisfies the provisions in 4A1.3(a)(1) as a standard for

14 upward departure and that there is reliable information that

15 indicates that the defendant's Criminal History Category

16 substantially underrepresents the seriousness of his criminal

17 history or the likelihood that the defendant will commit other

18 crimes.  And the policy statements says an upward departure may be

19 warranted.

20       Turning back to the latter part of that statement --

21 i.e., the likelihood that the defendant will commit other

22 crimes -- that actually ties not only into the 4A1.3(a) argument

23 I'm going to make but it also ties into the 3553 argument that I'm

24 going to make in that Sections 3553(2)(a), (b), and (c), instruct

25 the Court to impose a sentence:

2:13-cr-364-JAD-GWF - April 7, 2015

1          with regard to Section (a), to reflect the seriousness of

2    the offense; to promote respect for the law; and to provide just

3    punishment for the offense;

4          subsection (b), which I submit might be the most

5    important consideration here, respectfully, is to afford adequate

6    deterrence to criminal conduct; and

7          subsection (c), actually, I submit is equally as

8    important, to protect -- excuse me -- to protect the public from

9    further crimes of the defendant.

10          And, again, I submit that that meshes with the Guideline

11    policy for the Court to consider whether -- excuse me -- the

12    likelihood that the defendant will commit other crimes.

13          This is a person who, for whatever reason, decides to

14    commit serious federal crimes in order to go back into prison.

15    And, as I respectfully reminded the Court when Mr. Schuett pled

16    guilty, the Government is understanding that there may be some

17    mental issues with Mr. Schuett.  But the fact remains that the

18    crime that he stands convicted of today is a very serious offense.

19    I mean, he threatened to kill two federal judges.  And it

20    wasn't -- it was an idle threat to the extent that there weren't

21    any bombs actually placed in the courthouse.  But it was not an

22    idle threat to the extent that it engendered a response from the

23    Marshals.  These are things that have to be taken seriously.

24          And I'd ask the Court to keep that in mind in considering

25    that he committed this offense in a very short period of time

1    after he committed a similar offense that was actually more

2    serious, specifically for the record, when he threatened to blow

3    up things at Nellis Air Force Base which, by my recall, caused a

4    tremendous response from the authorities.  They actually had to

5    shut the base down.

6          Then I'd ask the Court to consider the fact that even

7    after being arrested for this offense, Mr. Schuett continued to

8    write letters threatening the President of the United States; the

9    same two district judges again; another federal courthouse in

10   Honolulu; Nellis Air Force Base; the Secret Service; and an

11   Assistant United States Attorney.

12         I submit that if the Court looks at Mr. Schuett's

13   criminal history; his motivation not only for committing the

14   previous offense where he went to prison for, where he served 42

15   months of imprisonment followed by 3 years of supervised release;

16   and his motivation for committing this offense, it stands to

17   reason that he will commit another offense again once he gets out

18   of custody.

19         So the likelihood that he will commit other crimes is

20   high.  I submit that that should give the Court a sufficient

21   enough reason to in fact impose a sentence higher than the

22   Guideline range that Ms. Levy and I agreed to because it will

23   hopefully afford adequate deterrence to criminal conduct on the

24   part of Mr. Schuett and that if the Court gives Mr. Schuett a

25   lengthy sentence he may think again before haphazardly threatening

——— 2:13-cr-364-JAD-GWF - April 7, 2015 ———

1  to kill a federal judge or prosecutor or disrupting the Nation's

2  National Defense Network by causing problems at a military

3  installation here, perhaps he may think twice about doing that;

4  and it will also protect the public from further crimes of the

5  defendant because this is a crime that in fact affects the public

6  even if it's directed towards a particular person, in this case

7  two federal judges.

8          So, for those reasons, I do submit that an 87-month term

9  of imprisonment is sufficient yet not greater than necessary.

10         The Guideline range that the parties agreed to, by my

11 calculation, comes out to 37 to 46 months.  If the Court imposed

12 the high end of that sentence, that would only be a mere four

13 months longer than the prior sentence he received for the same

14 conduct.

15         And in my humble opinion, Your Honor, if a person commits

16 the same violent crime again, they should get a substantially more

17 serious sentence.  And that's why the Government reserved the

18 right to specifically ask the Court to impose a sentence higher

19 than the Guideline range than the parties anticipated.

20         I submit that there can be no question -- strike that --

21 I submit that there should no question in the Court's mind that

22 Mr. Schuett is going to commit another offense like this again.

23 Previously he indicated that he would do whatever he had to do to

24 get in federal custody.

25         Now, I know that through Mr. Schuett's prolific pro se

1 motion practice that it appears that he has some sort of buyer's

2 remorse -- and a lot of criminals do so -- but I submit that the

3 Court should not overlook and not underestimate the seriousness of

4 this man's conduct; the likelihood that he is going to commit a

5 similar offense, if not the exact same offense again; the

6 likelihood that he is going to cause a disruption to essential

7 services -- either the Nation's National Defense Network or the

8 Nation's Criminal Justice System -- and, for that reason, I

9 respectfully request that you imposed a sentence that is much

10 lengthier than the Guideline range that we agreed to.  If for no

11 other reason to protect the public from future crimes or to impose

12 adequate deterrence to Mr. Schuett so that finally he may not

13 commit any further crimes.

14    Given the fact that this is now his 13th felony

15 conviction, I submit that something should be done to hopefully

16 stem the tide of Mr. Schuett's criminal conduct, especially given

17 that his conduct is affecting other people and innocent victims,

18 not only federal officers but also the taxpayers.

19    And, with that, I'd submit it.  However, Your Honor, I

20 would respectfully reserve the right to make another statement if

21 Mr. Schuett makes a statement that constitutes a material breach

22 of the Plea Agreement.

23  (Attorney-client discussion.)

24    THE COURT:  Understood.

25  (Attorney-client discussion.)

──────── 2:13-cr-364-JAD-GWF - April 7, 2015 ────────

1        THE COURT:  Give me just a minute.

2    (Pause in the proceedings.)

3        THE COURT:  Ms. Levy.

4        MS. LEVY:  Your Honor, my client wishes to address the

5    Court first if that's acceptable with the Court.

6        THE COURT:  Yes.

7        Mr. Schuett, I think I told you at your plea hearing that

8    at your sentencing that you would have the opportunity to address

9    me directly and to provide me with any information you think I

10   should consider in deciding what the appropriate sentence is for

11   you in this case.  This is your chance, sir.

12       THE DEFENDANT:  It's okay to talk now?

13       THE COURT:  Yes.

14       THE DEFENDANT:  Okay.

15       Well, I can understand what the D.A. right here says is

16   that I possibly would commit a new crime.  I would just like to

17   stress -- let's say -- my crimes, he says they are violent.  I've

18   never committed a violent act in my life, except threats.  I've

19   never committed a gun [sic].  Like it says in the PSI, I'd go

20   after a rifle.  How am I supposed to shoot one when you got no

21   money to even buy one?

22       When I got out -- the last four times I've gotten out of

23   prison, I've had no money; no place to live; nothing.  They didn't

24   give me anything to come out with.  That's the reason I went back

25   to the joint because medically I couldn't take care of myself on

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1  the street.

2         Now, since then I managed to get -- I've been -- my

3  Social Security's been restored -- well, it isn't right now.  It's

4  in abeyance 'cuz I'm in jail again.  But I can understand, you

5  know, they want to bury me.  I'll never get out again -- I know

6  that -- if I get hit with 87 months.  I won't live long enough to

7  do that.  My health is deteriorating.

8         My main thing is I admit I wanted to go back to jail.

9  But I -- at least I might have a chance this time.  The recidicism

10 [sic] rate, I don't know.  I don't know how to deal with not

11 having medical stuff on the street.  Maybe I can make enough money

12 this time to help me with my Social Security.  Like I say, it's

13 been restored.  I got Medicare.  I got whatever -- that Obama

14 Care, whatever they call that stuff.  You got to buy some kind of

15 insurance.  I don't know what it is.  But I've got Medicare.  That

16 was approved.  It was a little late in coming, so I didn't -- if I

17 would have waited an extra couple of days, I woulda had it and I

18 wouldn'ta had to do this stupid crime.

19         Most of the crimes over the past 10 -- well, when I got

20 out in -- I was 10 years clean when I was living here Vegas.  I

21 never committed a crime.  I didn't do anything.  I held jobs when

22 I could work.  It's just when everything started fallin' apart in

23 2010 -- when my mom died and a few things like that -- I had got

24 kinda left out in the cold.  And I had no access to anything.

25         So it's been kinda like up and down hill.  And I've

——— 2:13-cr-364-JAD-GWF - April 7, 2015 ———

1 reverted back to having to go back to prison 'cuz it's the only

2 way I could support myself.  There's no way I can live on the

3 street.  I mean, I got to have a certain amount of medical

4 supplies and I didn't have the money for that stuff.  Social

5 Security was doin' whatever they were doin', you know, for a

6 reconsideration.  And then they went ahead and violated me and

7 sent me back because, you know, supposably [sic] I was supposed to

8 report and I didn't make it there because I had a flat tire in my

9 wheelchair.

10         Now, currently -- like some of my medical issues that are

11 comin' on, my left arm's messed up and there's been -- there's

12 some other things that maybe needs to be taken care of in BOP, not

13 here.  But I request strongly not to spend the rest of my life in

14 prison.  I mean, you know, I think I still can be a productive

15 citizen in something.  I mean, like I say, I spent 10 years out

16 and I did -- I did attempt something to do something.

17         Now, going after these -- makin' these threats to the

18 judges and things like that, because I thought I would be kicked

19 out with nothin' again.  And that's one reason -- I figured that

20 would keep me in prison, committin' something like this.  It's

21 better than goin' out and tryin' to do something even stupider and

22 hurtin' people.  I never -- I never intended to hurt anybody.

23 Sure, I made a threat and things like that.  I figured, yeah, I'd

24 shake the courthouse a little bit.  You know, maybe you had to

25 leave the courtroom for whatever period of time or somethin' like

——— 2:13-cr-364-JAD-GWF - April 7, 2015 ———

1  that.  But nobody really got hurt.  My intention was not to hurt

2  anybody.  That's why I made a stupid threat like that.

3          And as far as the -- what the D.A. says here, writin' the

4  President of the United States and all that other stuff, I learned

5  a long time ago when you commit something like this that it's --

6  sometimes it's best to write a few more.  I was wrong in doing

7  that.  But I'd still --

8          THE COURT:  Well --

9          THE DEFENDANT:  -- like to have --

10         THE COURT:  -- what do you mean by that?  Sometimes it's

11  best to what?

12         THE DEFENDANT:  Well, sometimes overreact and write; you

13  know, do something further.  'Cuz sometimes -- I've seen with some

14  judges they all -- you know, when you get sentenced or

15  somethin' -- that they give you a certain amount, whatever comes

16  on, BOP kicks me back out and I got nothin'.  I'd rather like to

17  still try to make it on the streets, you know, but before I turn

18  70 years old.  Like I say, I'm not gonna live long enough to live

19  maybe five more years anyhow.

20         But I don't want to die in prison.  And I didn't commit

21  these crimes out of adverse to attack anybody or my country.  I'm

22  not crazy.  I'm not gonna pick up a gun and shoot a federal judge.

23  That's insane.  I mean, if I was -- if I'm considered insane, why

24  am I not goin' to a nuthouse?  I'm not insane.  I'm not crazy.

25  I'm not professing to be crazy.  And there's no way I'm gonna

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1   attack a federal judge.  That's insane.

2        Like I say, I did this basically under the assumption

3   that, you know, it would quickly get me back in prison.  But

4   that's not gonna achieve anything either by goin' to prison.  I'm

5   not -- I'm not achievin' anything; I'm not -- I'm not productive

6   at anything.  I'm sittin' there doin' nothing.  At least on the --

7   if I did make it back on -- I understand you're gonna have to send

8   me to prison for some time.  I understand that.  But this 8 years

9   I think is a little -- really a little bit stiff.

10       I mean, like I say, I have -- I've never committed a

11  violent crime as far as enacting of a violent crime.  None of

12  my -- none of my -- none of my crimes are violate at all.  They

13  are all property offenses or these -- these stupid threats.  I've

14  never committed an act of violence.  And I don't know where he's

15  comin' from with all this rhetoric that I've committed a violent

16  crime.  I didn't -- I didn't attack anybody.  I've never used a

17  weapon.  I don't have the -- even the qualifications to handle a

18  weapon.

19       And, at the time when I -- when I committed this crime, I

20  was already -- there was no way I could, you know, have access to

21  a gun.  I had no money anyhow.  I didn't even have enough money to

22  eat on when I came out of the joint.

23       And then, when I did come out last time under parole, I

24  told 'em then before I didn't wanna come out because I didn't want

25  to be stuck in a situation where I couldn't handle to take care of

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1    myself.  I come out.  The parole officer says, oh, yeah, the

2    parole -- parole people help ya.  They helped me all right; right

3    into a shelter where I got robbed the first night.

4         That's no way to live, but it's -- it's still better than

5    livin' in jail.  At least with some Social Security -- I don't

6    know how much it is.  I think it's about a thousand bucks a

7    month -- that's enough to -- with Section 8, I can get housing or

8    something.  But it's better than sittin' in jail.

9         I know if I'm productive, I'm doin' somethin' I'm not

10   gonna commit another crime.  The only time I did these was because

11   I was in a situation where I couldn't deal with, you know, not

12   workin' or whatever you want to call it.  I know I've been kind of

13   a loon with all these stupid court things and stuff like that.

14   But that's -- I was being attacked in CCA medically.  And it's --

15   it's become -- it's become a serious problem now.  But that --

16   that doesn't still warrant -- warrant me havin' to, you know, like

17   I say, bother the Court which I have.  I have apologized for

18   writes -- numerous motions or whatever.  I tend to get a little

19   rattled sometimes.  But I apologize for that.

20        You know, like I say, I don't know -- I don't know what

21   to do.  I mean, you know -- I know you're gonna send me to the

22   can.  I accept that.  I will -- you know, if I have to do 87

23   months, if I live long enough, I'll do it.  I'll come out and do

24   parole again.  But, by then, I don't know what I'll have to do for

25   Social Security.  They're gonna -- they're gonna make me redo and

——— 2:13-cr-364-JAD-GWF - April 7, 2015 ———

1   that's gonna take 2 years.  I'll come out with nothin' again.

2          At least now at least I have some semblance -- I don't

3   care what this man says.  If he says I'm breakin' policy or

4   breakin' this -- this -- this violation, I would request you

5   release me today.  I don't care what he says.  But I know you're

6   not gonna be able to.  I know I have to do some time.  I

7   understand that.  I'd committed a crime.  I -- I -- I agree.  I

8   need to be punished, whatever reasons for it.  You know, like I

9   say, he can object all he wants.  You know, I could really care

10  for less.  I committed a crime.  I'm willing to do the time for

11  it.

12         But at least -- I would like to have at least a chance to

13  come back out before I'm -- like I say, I'm deceased or in the

14  ground or whatever you want to call it.  I think I could still

15  make an -- make an advent.  I'm 60 years old.  I mean, I gotta

16  some kind of wisdom.  And I'm not gonna -- I'm not gonna preach

17  that -- you know, God and all this other stuff.  I believe in God,

18  yes, and all this other -- you know, and I pray a lot.  But I'm

19  not gonna use that as a mode to get out of prison.

20         I admit I committed a crime; I'll pay the price.  But 87

21  months, I mean, that's -- like I say, that's a little stiff.  I

22  mean, I didn't -- like I say, I have never committed a violent

23  crime outside of the threats or anything.  You know, he's comin'

24  off saying I'm -- you know, I'm gonna shoot a federal judge; I'm

25  gonna do this and that.  How?  With what?  I have nothing to do it

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1  with.  I have no intention in reality to shoot a federal judge

2  that -- like I say, it's insane.  And I'm not -- I'm not a crazy

3  person.  I think -- I think a certain -- excuse me.  My wording

4  might be a little wrong and stuff like this.

5            THE COURT:  You're doing fine, Mr. Schuett.

6            THE DEFENDANT:  But I don't believe sittin' in prison for

7  the rest of my life's gonna, you know, achieve anything.

8  Actually, it's gonna be more of a direct waste of the Court's time

9  and it's gonna be a waste of puttin' me in prison, taxpayer's

10 money, 'cuz it's gonna cost a fortune just in medical just to --

11 just to -- just to house me alone.

12            And, I mean, right now the courts are so tied up with all

13 these other, let's say, more serious offenders.  I mean, sure, I

14 admit -- you know, I come -- like I say, made threats; whatever.

15 I know they were wrong, but -- or say that I did it; I will do the

16 time for it.  But I don't want to -- you know, it doesn't make any

17 sense to go do it for the rest of my life.

18            And I -- I -- I believe strong in my heart if I had --

19 had a chance, you know, in making it -- I just never -- the last

20 four times, I never got the chance to do it.  I come outta prison;

21 I got nothin'.  I mean, they don't even give you gate money

22 anymore.  I wasn't allowed to work in there because of my medical,

23 my last four times in.  I -- you know, I did some side work and

24 stuff like that for other inmates.  But that's not enough where

25 you can make -- you know, save any money up.  I wasn't allowed to

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1   work at all.  So I couldn't save money.  And, you know, like I

2   say, they don't give you gate money when you come out anymore.

3   They ain't got it or they -- they keep sayin', well, we have no

4   money 'cuz we're sorry to say that the courts are sendin'

5   everybody to prison.  So there's more inmates than they have jobs.

6        I plan to, while I'm in, talk to the shrinkers, which I

7   didn't do before.  I believe I do have a mental issue.  There --

8   there's no doubt about it because I don't react -- when I'm

9   threatened, I react very adversibly [sic] but not violent.  I just

10  don't make decisions right.

11       I might even attend -- I have -- I do have a drinking

12  problem.  I -- I admit when I was out on the street this time I

13  went back to drinkin' again.  But it is a problem.  And it's

14  somethin' that I need to eradicate 'cuz I can't afford to be

15  drinkin'.  And that alcohol will kill ya just as fast as prison.

16       And they got the programs in there.  So I'm willin' to at

17  least -- at least attempt to try to do somethin'.  I tried to get

18  the RDAP Program last time I was in -- well, time before last.  I

19  didn't complete it.  I was almost at graduation of it and there

20  was a problem at Terminal Island when I was there and I got -- I

21  was attacked by another person and had to defend myself.  And that

22  got me sent to the United States Penitentiary at Beaumont.  I

23  don't want to end up havin' a situation like that again.

24       But I'd just like to have at least a chance, you know, at

25  some life future down the road.  And if this -- if this -- if

——— 2:13-cr-364-JAD-GWF - April 7, 2015 ———

 1  Mr. Smith thinks I'm tryin' to get out of his plea bargain, I'm
 2  not trying to get out of his plea bargain, but I think 87 months
 3  is a little bit stiff.  I mean, for -- I admit, yeah, sure things
 4  happened and things were erratic -- you know, people were messed
 5  up and their lives were overturned.  I apologize for all that.
 6  But, like I say, it wasn't intentional to commit -- or hurt
 7  anybody.  I had no intentions of hurting anybody.  And that's why
 8  I didn't commit anything -- you know, I -- I talked to friends
 9  about this and they say, well, you ought to go rob a bank or you
10  should go rob a post office or do something really stupid.  And I
11  said:  Why?  Why should I threaten somebody when I can do just
12  somethin' -- a crummy threat?  That way there's -- really nobody's
13  being hurt.  I'm not physically -- and I've never in any of my
14  crimes hurt anybody.  All my crimes have either been nonviolent or
15  they've been property-related, penny ante most of 'em.  But that
16  type of thing.
17          And I'm not -- like I say, I am -- I'm remorseful for
18  what I did.  I was wrong.  It was the wrong way to do it.  Maybe
19  by -- by this last time there wasn't much I could do.  I didn't
20  have a parole officer to go to anyhow since I was -- I was taken
21  off parole this last time.  So I didn't know what to do; really
22  what to do.  Usually I would just go back to the parole office
23  and, you know, kinda go through that.  But I didn't have no parole
24  officer to go through.
25          And there was nowhere -- there was nowhere -- nowhere

————— 2:13-cr-364-JAD-GWF - April 7, 2015 —————

1  else to return to.  I had no family left.  My -- all my people are

2  dead.  So I have nowhere really to turn.  So I just reverted to

3  what I knew best, was to make a threat.  It was the easiest way to

4  go back to prison.

5          THE COURT:  I understand.

6          THE DEFENDANT:  And at the time, like I say, you know,

7  I -- I've got -- I've got access to Social Security and stuff.

8  It's there.  It can be reinstated.  But, if I'm like doin' over

9  5 years, it'd be a waste of time.  It'll take 2 to 3 years to

10  reactivate it.  It's just too long being in prison.  And, if I

11  come out again with nothin', I'm still stuck in the same boat and

12  I'll be 67, 68 years old and probably not be able to even roll my

13  stuff around -- roll myself around.  I'm havin' a hard time doin'

14  that with my left arm now, which they think physical therapy's

15  gonna do, but it's not a physical therapy problem.  It's -- it's

16  a -- it's a crushed disc that's causing compression on a nerve

17  which is gonna take surgery.  Physical therapy isn't gonna do it

18  because it's causing paralysis.  And that was told by the CCA

19  doctor.

20          So, I mean, it's a situation -- I'm gonna get older.  I

21  know that.  I come out again, I'm just gonna be in the same shape

22  unless I have something to come out to.  And at least I've got

23  some semblance of Social Security.  It is -- it is there.  It's

24  somethin'.

25          THE COURT:  All right.

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1        THE DEFENDANT:  But at 5 years, 6 years, it's -- I'll

2   be -- I'll just be older and come out with the same problem again.

3        THE COURT:  I under --

4        THE DEFENDANT:  And it's -- I'd rather at least attempt

5   to try something at life again.  I mean, you know, I don't want to

6   come back -- if I do come back out and it is short, I don't want

7   to come back to Las Vegas.  That's for dang sure.  I'd go

8   someplace else.  But at least I'd like to at least request and

9   pray for the chance.

10       THE COURT:  I understand, sir.

11       Is there anything else that you think I should consider,

12  Mr. Schuett?

13       THE DEFENDANT:  Nah, I don't want to draw it out.  I know

14  you're busy and you got other people to deal with.  It's just

15  sometimes, like I say, I get drawn out.  And you notice by some of

16  my writings I get a little -- a little rambunctious.

17       But it's -- like I say, I apologize for all that stuff.

18  It's -- you know, you get old like me, you get erratic; you get

19  crazy, you know.

20       But I am requesting a reduced sentence.  And Mr. Smith

21  can do what he wants.  He can throw the book at me or raise -- get

22  God to throw lightning bolts at me.  But I'm gonna -- I'm gonna

23  make the request.  Thank you.

24       THE COURT:  All right.  I understand your position.

25  Thank you.

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1          Ms. Levy.

2          MS. LEVY:  Your Honor, if I may, I just want to touch

3   upon some more of the legal arguments the Government made.  Just

4   briefly.

5          The Government made an argument which, of course, they

6   are allowed to do pursuant to the Plea Agreement regarding my

7   client's criminal history being over -- being understated.  I

8   would disagree with that characterization of my client's criminal

9   history.  It appears -- my client's 60 years old right now.  It

10  appears that the last time he committed an offense that was an

11  offense besides committing an offense to go to federal prison.  So

12  he committed offenses with the intent, which is very obvious, to

13  go to federal prison.

14         Outside of that, the last time he committed an offense

15  was when he was 31 years old.  So it's been a significant amount

16  of time since he has committed an offense except for those which

17  the sole purpose is to go to federal prison.  And that's clear

18  because he picks federal facilities or steals from federal

19  facilities with the sole purpose of trying to go back to prison.

20  He told the officers in this case that's why he was committing the

21  offense.  He was very clear; repeated it over and over again:  I

22  just want to go to federal prison.  I just want to go to federal

23  prison.

24         So it appears that the Guidelines are actually

25  appropriately calculating his criminal history here.  Because the

2:13-cr-364-JAD-GWF - April 7, 2015

1  age of all of the other prior offenses are over 30 years old, it

2  appears appropriate that they are not qualifiers for Criminal

3  History points.  And the only Criminal History points that he has

4  are from the recent threats.

5       After this offense, he would now qualify, if he commits

6  another offense similar to this one, as a career offender because

7  they are recent enough that they garner points.  So, again, I

8  think that bodes in the favor of the idea that his Criminal

9  History Category is appropriately contained within a Criminal

10  History Category of V because if he comes out again and commits

11  the same offense he would then be a career offender based upon his

12  criminal history.  So it does appear to capture his criminal

13  history appropriately.

14       The Guideline that we agreed to was 37 to 46 months, and

15  so that appears to be a more appropriate number in this case for

16  Mr. Schuett.

17       In terms of the deterrence that the Government discusses,

18  it's a little -- it's sort of a difficult argument to make; it's

19  kinda of a catch-22:  Send him to prison for a long time to deter

20  him from trying to commit an offense to go to prison for a long

21  time.  So I don't exactly know how to formulate a counterargument

22  to that.  But, for Mr. Schuett, deterrence doesn't appear to be an

23  appropriate 3553(a) factor when you look at the sentencing

24  requirements.

25       And I would leave it at that, Your Honor.

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1          (Attorney-client discussion.)

2               THE COURT:  Ms. Elwess, does Probation have anything else

3     to add?

4               MS. ELWESS:  No, Your Honor.

5               MR. SMITH:  Your Honor, I do have something else to add

6     if the Court would indulge me.

7               THE COURT:  Yes, Mr. Smith.

8               MR. SMITH:  There are a couple of things that I would

9     like to respond to that Mr. Schuett just stated, the first being

10    that he's never committed a crime of violence other than these

11    crimes which he wants to minimize.  That's actually not true.

12              Paragraph 44 lists an Attempted Robbery conviction where

13    the reports indicated that he was hitchhiking outside of Tacoma,

14    Washington.  When a woman stopped to give him a ride, he pulled a

15    knife; placed it at her throat and demanded money.  He was

16    convicted of that and went to prison for 5 years.  That's a crime

17    of violence.  So he can't say he's never committed a crime of

18    violence because he has.

19              Also, Mr. Schuett spent a lot of time saying that, well,

20    now I can get Social Security.  So give me a chance, Judge.  Don't

21    give me a long period of time.

22              But the conviction listed in paragraph 50 where he stole

23    from Travis Air Force Base he said the same thing.  The PSR says:

24    At the time of this offense, the defendant stated he committed

25    this offense because he was homeless and had no source of income.

1  The defendant stated since he committed this act he has been

2  granted Social Security benefits and can now sustain a lifestyle

3  outside of prison.

4        But then, after he got out of prison, that's when he then

5  committed the offense where he threatened to blow up Nellis Air

6  Force Base.  So now he's here saying, Judge, give me a reduced

7  sentence because now I'm on Social Security and I can survive.

8  That's the same thing he said two federal convictions ago and now

9  here we are again.  So you can't believe a thing that this man

10  says, Your Honor.

11        Also, he continues to minimize this offense because it's

12  just a threat.  No big deal; right?  No big deal.  That's not

13  true.  As the PSR points out, threats are not victimless crimes.

14  They not only affect the recipients; they also impact the people

15  who work near the recipient and the recipient's loved ones.  In

16  addition to the fear that the threats create, they also have an

17  increased financial impact.  And increased technological and

18  personnel court security measures are expensive and are ultimately

19  paid for by the taxpayers.

20        So you can't believe a thing he says because he just lied

21  to the Court and said he's never committed a crime of violence,

22  which he has.  I submit attempted robbery where you place a knife

23  to a woman's throat is a crime of violence.

24        You can't believe him because now he's saying I'm not

25  gonna do it again because I have Social Security benefits.  He

1   said that some three -- two convictions ago.  But he's now

2   committed two additional offenses and these are crimes of

3   violence.  As Ms. Levy has pointed out, if he does it again, he's

4   a career offender.

5          And, again, the crimes are serious.  And that's why I'm

6   respectfully requesting that the Court impose an upward variance

7   or an upward departure.

8          THE COURT:  Ms. Levy, did you want to respond to those

9   points?

10          MS. LEVY:  I don't, Your Honor.

11          THE COURT:  Thank you.

12          All right.  Then is there any reason why I should not --

13   any reason, legal or just, why I should not proceed with

14   sentencing at this time?

15          MS. LEVY:  No, Your Honor.

16          MR. SMITH:  No, Your Honor.

17          THE COURT:  All right.  I'm going to start with the

18   Guideline calculations and -- so I'm on page 9 of the PSR.

19          I agree that the Base Offense Level is 12.  I find that

20   the specific offense characteristics in paragraphs 28 and 29,

21   which have a two-level and four-level upward adjustment

22   respectively, are supported by a preponderance of the evidence.

23          And that leaves me with paragraph 30, which is the

24   victim-related adjustment.  It's a six -- Probation applied a

25   six-level increase because the victims were government officers --

1  they were in fact U.S. District Judges -- and the offense of

2  conviction was motivated by the fact that they are federal judges

3  and the applicable Chapter Two Guidelines, from Chapter Two, Part

4  A - Offenses Against The Person.  So then 3A1.2(b) would apply and

5  would require an increase by six levels under the Guidelines.

6          Looking at that adjustment, I do understand that the

7  parties agreed not to pursue that in their stipulations in the

8  Plea Agreement.  The Plea Agreement in that respect certainly is

9  not binding on me.  So the question for me is whether I have a

10  preponderance of the evidence to support the application of that

11  factor.  And, when I look at the facts in the Plea Agreement, I

12  think I do have that preponderance of the evidence in the Plea

13  Agreement.

14          And I recall the discussion I had with Mr. Schuett at the

15  plea hearing as well.  But he admitted that during a post-Miranda

16  interview he stated:  I am threatening to blow up two federal

17  judges.  The first was that he wanted to blow up the judge with

18  the initials R.H. because he sent him to prison and the judge with

19  the initials J.M. because he turned down his court case.  And he

20  said, if I get out of county jail, I will shoot a federal judge

21  and that he would go off the judge with the initials R.H. first.

22  So I think it's clear that I have more than a preponderance of the

23  evidence to support the application of those additional

24  six-level -- that additional six-level increase under 3A1.2(b).

25          And, when I weigh that against the policy to support

1   negotiated plea deals, I think that I'm going to apply the

2   six-level increase and find that in the calculations here that the

3   six-level applies under 3A1.2(b) and that gives me ultimately a

4   Total Offense Level of 21.  So then the Guideline calculations

5   under that, with a level 21 and a Criminal History Category of V,

6   I find that is accurate, the Criminal History Category of V.

7           The Guideline provisions are a range of 70 to 87 months,

8   supervised release of 1 to 3 years, a fine range of 7,500 to

9   75,000, and the special assessment of a hundred dollars applies.

10          So does everyone agree that if I -- as I have now

11  concluded that the Guideline calculation is a level 20 with a

12  Criminal History Category V that those are the ranges?

13          MS. LEVY:  Yes, Your Honor.

14          MR. SMITH:  Yes, Your Honor.

15          MS. LEVY:  We're just gonna object to that -- the --

16          THE COURT:  Application.

17          MS. LEVY:  That's correct, Your Honor.

18          THE COURT:  I understand that.

19          And the basis for your objection?

20          MS. LEVY:  Is that we don't believe that it applies in

21  this particular case, Your Honor.

22          THE COURT:  And why not?

23          MS. LEVY:  Because the intent that -- it's our position

24  that it is not applicable in this because the Government is not

25  putting on evidence to prove that the offense of conviction was

─── 2:13-cr-364-JAD-GWF - April 7, 2015 ───

1  motivated by the status of the person being a federal judge.

2          THE COURT:  All right.

3          And I understand your position and I think that the

4  statements in the PSR and the statements made at the -- or not in

5  the PSR -- in the Plea Agreement and made at the plea hearing

6  support that finding.  So that's why I find that the six levels

7  apply under that provision.  I think it seems very clear to me

8  that the whole point of this was that they are federal judges and

9  that is why those threats were made.

10          Now -- so then the range I'm working with is 70 months to

11  87 months.  And, of course, we all recognize that the Guidelines

12  are only advisory on the Court -- I recognize that -- and my real

13  goal is to apply all of the factors under 3553(a) to determine the

14  just sentence in this case.

15          So I first want to note that I feel like I've really

16  gotten to know Mr. Schuett over the course of this prosecution.

17  Even though this is a 2014 case, I think Mr. Schuett has been a

18  prolific writer in this case --

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  -- and so I certainly have gotten to know a

21  lot about Mr. Schuett in his communications, his filed

22  communications, with the Court.

23          And I -- Mr. Schuett, I want you to understand:  I do

24  hear you.  I have listened to you.  And I understand your

25  positions here.  I understand that you engaged very calculated

─── 2:13-cr-364-JAD-GWF - April 7, 2015 ───

1   acts in order to get yourself back to prison.  And I know that is

2   not the first time that you've done this; this has been a number

3   of times that you've done this.  As Mr. Smith notes, this is your

4   13th felony conviction.  So you're a habitual recidivist,

5   essentially, and you acknowledge you need some treatment for sure.

6           THE DEFENDANT:  Hmm.

7           THE COURT:  But I think we've all acknowledged that we

8   think that some treatment would probably help you.

9           But, nevertheless, as you have repeatedly told me:  This

10  was intentional.  You did -- this was very calculated.  You knew

11  what you were doing.  You did it on purpose.  And I understand

12  your statement that you didn't intend to hurt people and that

13  nobody really got hurt.  But I also recognize that crimes like

14  this are not victimless crimes; they really aren't.  They are very

15  disruptive.  They create fear and anxiety.  They do a lot of

16  things to society.

17          So I understand your position that you didn't use a gun,

18  you didn't have one to use, and so you didn't really intend to

19  actually shoot --

20          THE DEFENDANT:  No.

21          THE COURT:  -- a federal judge.

22          THE DEFENDANT:  No way.

23          THE COURT:  But you made threats that you would, if you

24  got out of jail, shoot a federal judge.  And those are really,

25  really serious things to do.  And I don't say that just because

1    I'm a federal judge.  I say that because threatening to kill

2    people is a very serious thing to do and threatening to disrupt

3    the justice system or the defense system are very serious, scary

4    things to do to society.  And so I don't take this type of crime

5    lightly even though I understand your position that you really

6    didn't intend to physically harm someone.  And I know you believe

7    that.  I know.

8            And I also understand your position that your Social

9    Security has apparently been restored or close to restored.  I

10   also understand Mr. Smith's position that this isn't the first

11   time that position has been made at sentencing.  And, you know, I

12   get enough communications from you that I understand that

13   depending on the day sometimes you want me to delay your

14   sentencing so that I -- so that you stay where you are longer

15   or -- and your position just changes often.  And I understand and

16   that's your prerogative.

17           THE DEFENDANT:  It's basically medical issue.  But, like

18   I say, I don't know where I'm gonna need to stay, up there when

19   I'm seeing doctors now or go back to BOP which it'll take about

20   another year to start this all over again.

21           THE COURT:  Well, I'm hopeful that it won't take another

22   year to start --

23           THE DEFENDANT:  I --

24           THE COURT:  -- this --

25           THE DEFENDANT:  -- hope not --

────── 2:13-cr-364-JAD-GWF - April 7, 2015 ──────

1          THE COURT:  -- all over --

2          THE DEFENDANT:  -- either.

3          THE COURT:  -- again.  Yes.

4          THE DEFENDANT:  I hope not either.

5          THE COURT:  I'm hopeful that the Bureau of Prisons will

6   be able to manage your medical issues.

7      (Attorney-client discussion.)

8          THE COURT:  And I can appreciate your requests now to not

9   spend the rest of your life in prison, but you've also told me

10  before that that was your whole goal.  So I understand that

11  situations change for you and --

12         THE DEFENDANT:  Yeah.

13         THE COURT:  -- and the reasonings change from time to

14  time.

15         THE DEFENDANT:  I cried wolf too many times.

16         THE COURT:  Well, um...

17         And it's all of this that I have to consider.  And part

18  of what I have to consider is -- you know, one of the factors

19  under 3553(a), subsection (d), is that I have to protect the

20  public further crimes.  My -- one of the things I have to try to

21  do is find a way for you to not keep calling in bomb threats --

22         THE DEFENDANT:  Yeah.

23         THE COURT:  -- because I don't want ya to keep callin' in

24  bomb threats; society doesn't want you to keep callin' in --

25         THE DEFENDANT:  Um-hum.

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1          THE COURT:  -- bomb threats.

2          THE DEFENDANT:  (Shrug.)

3          THE COURT:  It's not good for you; it's not good for

4  anybody.

5          And I have to try to find a way to deter that.  And, with

6  you, it's a little more challenging because you've indicated

7  numerous times that -- and, in fact, not just in this case but in

8  your prior cases -- not with me; with other judges -- that, you

9  know, you wanted to go back to prison.  So --

10          THE DEFENDANT:  Yeah, for the time --

11          THE COURT:  -- that --

12          THE DEFENDANT:  -- yeah.

13          THE COURT:  -- it's kind of a unique situation that we

14  have here.

15          THE DEFENDANT:  I did.

16          THE COURT:  And I also recognize that you do have an

17  extensive criminal history that does involve a number of these,

18  you know, threats and false statements and actions geared towards

19  trying to get back into prison or not.  So this is a relatively

20  unique situation that I'm dealing with.

21          And so I've considered all of those factors; everything

22  you said; everything counsel has said.

23          I have reviewed the charging document, the Plea

24  Agreement, my notes from the Plea Agreement, my very clear memory

25  from the plea hearing, the Presentence Investigation Report,

─── 2:13-cr-364-JAD-GWF - April 7, 2015 ───

1  obviously the intimate knowledge that I have of Mr. Schuett and

2  his situation because I have received so many pro se

3  communications from him --

4          THE DEFENDANT:  Yeah.

5          THE COURT:  -- all of which is in the record -- and I've

6  listened to and certainly taken to heart the comments by counsel

7  and the arguments by counsel and everything that Mr. Schuett had

8  to say here today.

9          And, Mr. Schuett, I want you to really understand:  I do

10  hear you and I listened to you and I haven't ignored a single

11  thing that you have filed.

12          THE DEFENDANT:  I appreciate that, ma'am.

13          THE COURT:  And, you know, I continually deny the things

14  that you --

15          THE DEFENDANT:  Yeah.

16          THE COURT:  -- file on a pro se basis because you have a

17  lawyer who represents you and our rules don't let you also file

18  motions when she is able and perfectly qualified to decide whether

19  something should be filed or not in your case.

20          THE DEFENDANT:  Yeah.

21          THE COURT:  And we've talked about that a number of

22  times.

23          But I don't want you to feel in any way that I've ignored

24  you because I absolutely --

25          THE DEFENDANT:  Oh, I don't --

—————— 2:13-cr-364-JAD-GWF - April 7, 2015 ——————

1           THE COURT:  -- have not.

2           THE DEFENDANT:  -- believe that, ma'am.

3           THE COURT:  Okay.

4           THE DEFENDANT:  I don't believe it.  It's just -- you

5   know, like I say, everything was related in medical.  It wasn't

6   anything to do with the case.

7           THE COURT:  And we'll talk about that in a minute too

8   when I'm done with all the sentencing --

9           THE DEFENDANT:  Uh-huh.

10          THE COURT:  -- aspect of this.

11          But having considered all of that and the factors under

12  3553(a), particularly the need to afford --

13     (Attorney-client discussion.)

14          THE COURT:  -- adequate deterrence to additional criminal

15  conduct and the need to protect the public from further crimes and

16  to recognize the seriousness of this crime but also to balance

17  that with the unique characteristics and situation of Mr. Schuett

18  who apparently feels that he's in a position where he's left with

19  no choice but to commit a crime like this in order to go back to

20  prison.

21          So please know I've considered absolutely anything and

22  everything in this case in deciding on the right sentence that I

23  think is appropriate here.

24          And, based on all of this, I find that a sentence of 75

25  months is sufficient but not greater than necessary to achieve the

1  goals --

2      (Attorney-client discussion.)

3          THE COURT:  -- and objectives of sentencing followed by a

4  3-year term of supervised release.

5          So, Mr. Schuett, you will have a probation officer that

6  you will get to know and who should able to assist you and help

7  you so you don't find yourself in the same situation again.

8          And I find that that 3-year term of supervised release is

9  also sufficient but not greater than necessary to achieve those

10 same goals and objectives and to really assist Mr. Schuett with

11 the transition back into society.

12         So, Mr. Schuett, there, of course, will be rules and

13 conditions that you have to follow to avoid going back to prison

14 after you get out.  And the Probation office is gonna give you a

15 list of those in just a minute, but I'm going to go over with them

16 with you in the meantime.

17         If you want to follow along with me, you can find them in

18 the Presentence Investigation Report starting on page 34.

19     (Brief pause.)

20         THE COURT:  At the bottom.

21         MS. LEVY:  Yeah, we have it, Your Honor.

22         THE COURT:  Oh, great.  Thank you.

23         MS. LEVY:  I'm sorry.

24         THE COURT:  No problem.

25         MS. LEVY:  I apologize.

───── 2:13-cr-364-JAD-GWF - April 7, 2015 ─────

1          THE COURT:  All right.

2          So, while on supervised release, you'll comply with the

3   standard conditions of supervision recommended by the Sentencing

4   Commission and also these conditions:

5          The first is you shall not commit -- and this kind of

6   goes without saying -- shall not commit another federal, state, or

7   local crime during your term of supervision.

8          There's two rules about illegal controlled substances:

9   one, you can't possess them and, second, you have to refrain from

10  any unlawful use of controlled substances.  And you have to submit

11  to at least one drug test within 15 days of the commencement of

12  supervision and at least two periodic drug tests after that not to

13  exceed 104 annually.  Revocation of supervised release is

14  mandatory for refusal to comply with the drug testing requirement

15  or for possessing illegal controlled substances.

16         You also shall submit to DNA collection and analysis as

17  directed by the probation officer.

18         You must submit your person, property, residence, place

19  of business, and vehicle under your control to a search by the

20  Probation office at a reasonable time and in a reasonable manner

21  based on reasonable suspicion of either contraband or evidence of

22  a violation of a condition of supervision and refusal to submit

23  may be grounds for revocation.

24         You also can't have -- you can't possess, have under your

25  control, or have access to any guns, firearms, explosive device,

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1  or other dangerous weapons as defined by federal, state, or local

2  law.

3       You must participate in and successfully complete a

4  health treatment program and that might include testing,

5  evaluation, or outpatient counseling as approved and directed by

6  the Probation office.  And you need to refrain from the use and

7  possession of beer, wine, liquor, and other forms of intoxicants

8  while you're participating in this treatment.  And you'll be

9  required to contribute to the cost of the treatment based on your

10  ability to pay as approved by the Probation office.

11     (Attorney-client discussion.)

12          THE COURT:  They'll help you with all of this.

13          You also have to use your real name.  You will be

14  prohibited from the use any of aliases, false dates of birth,

15  Social Security numbers, places of birth, or any other pertinent

16  demographic information.

17          And, finally, as soon as you get, you've got 3 days to

18  report to the Probation office.  So you have to make sure you do

19  that.  They are there.  They have services.  They have things to

20  help you out --

21          THE DEFENDANT:  Right.

22          THE COURT:  -- so that you can transition back.

23          I also would encourage you, very strongly, to start

24  communicating with Social Security before you get released.  So

25  that, if that is what you are looking at as your method to survive

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1  on the outside, you need to make sure that you start that early so

2  that that process is intact when you get out and it's there for

3  you as a support system.  Okay?

4          THE DEFENDANT:  (Nods head.)

5      (Attorney-client discussion.)

6          THE COURT:  Obviously that's not a condition.  That was

7  just a recommendation.

8          Can we please provide Mr. Schuett with a copy of those

9  terms and conditions?

10          MS. ELWESS:  Yes, Your Honor.

11          THE COURT:  All right.

12          MS. LEVY:  Your Honor, can I make a request for

13  placement?

14          THE COURT:  Yes.  Give me just a second.

15      (Brief pause.)

16          THE COURT:  All right.  And, with respect to all of those

17  --

18      (Attorney-client discussion.)

19          THE COURT:  -- conditions I find they are reasonably

20  represented to the goals of deterrence, protection of the public,

21  or rehabilitation; they involve no --

22      (Attorney-client discussion.)

23          THE COURT:  -- greater deprivation of liberty than is

24  reasonably necessary to achieve these goals; and that they are

25  consistent with any pertinent policy statements issued by the

— 2:13-cr-364-JAD-GWF - April 7, 2015 —

1    Sentencing Commission.

2         And the record will reflect that Mr. Schuett has been

3    provided with a written copy of these conditions.

4         The mandatory penalty assessment of a hundred dollars is

5    required by statute, it's hereby imposed, and it's due

6    immediately.

7         No fine will be imposed based on a demonstrated inability

8    to pay.

9         This is not a restitution or a forfeiture case.

10        Recommendations to a facility.

11    (Attorney-client discussion.)

12        MS. LEVY:  Marianna, Florida.

13        THE COURT:  Marianna, Florida.

14        MS. LEVY:  That's correct, Your Honor.

15        THE COURT:  Okay.

16        Mr. Schuett, have you done some research on that one?

17    You think they can handle your medical issues?

18        THE DEFENDANT:  Yes, ma'am.  It's secure Level 3 and it's

19    got a UNICOR that I used to -- I've worked that type of UNICOR

20    before.

21        THE COURT:  Okay.

22        THE DEFENDANT:  So it's -- and it's close by.  I've got

23    some cousins livin' down there.  So...

24        THE COURT:  Great.

25        All right.  Well, then I will place that recommendation

1  in the record for Marianna, Florida, and certainly also highlight

2  for the Bureau of Prisons that Mr. Schuett has some significant

3  medical restrictions and conditions that need to be addressed and

4  cared for.  So...

5          And you're a paraplegic; is that correct, sir?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  All right.

8          And I'll make sure that the record does reflect that as

9  well so that maybe that can help speed up the process.  Um --

10         MS. LEVY:  So one other thing.  My -- I have explained to

11  my client that he will get credit for the time that he has been

12  in.  But he asked that I specifically request that.  So I am doing

13  so, Your Honor.

14         THE COURT:  All right.

15         So the record -- you will.  The Bureau of Prisons is the

16  one who calculates all --

17         THE DEFENDANT:  Okay.

18         THE COURT:  -- of that.  I'll also place, just as a

19  belt-and-suspenders approach, a recommendation that the Bureau of

20  Prisons ensure that he does receive the time for credit -- credit

21  for time served.

22         Mr. Schuett, in your Plea Agreement, you waived your

23  rights to appeal your conviction and your sentence.  Nevertheless,

24  there are some very limited appellate rights that cannot be

25  waived.  To the extent that you wish to exercise any of these very

— 2:13-cr-364-JAD-GWF - April 7, 2015 —

1  limited retained appellate rights, I'm advising you that you have

2  14 days to file a Notice of Appeal.

3           THE DEFENDANT:  Um-hum.

4           THE COURT:  And, if you cannot afford an attorney to

5  represent you, one will be appointed.

6           And, if you cannot afford a transcript of the record in

7  this case, one will be prepared at the government's expense.

8           Do you understand all of that?

9           THE DEFENDANT:  Yes, ma'am.  I won't be seeking appeal.

10          THE COURT:  I'm sorry?

11          THE DEFENDANT:  I will not be seeking appeal.

12          THE COURT:  Okay.  Again, entirely your choice.

13          Is this a single-count Indictment?  Oh, yes, because it

14  was a negotiated --

15          MR. SMITH:  Yes, ma'am --

16          MS. LEVY:  Plead to an --

17          MR. SMITH:  -- it was an --

18          MS. LEVY:  -- Information.

19          MR. SMITH:  -- Information.

20          So the Government would move to dismiss the Indictment at

21  this point.  Oh, no.  Strike that.  There wasn't an indictment.

22          THE COURT:  It was --

23          MR. SMITH:  So we're --

24          THE COURT:  -- just a --

25          MR. SMITH:  That's right.

—————— 2:13-cr-364-JAD-GWF - April 7, 2015 ——————

1           THE COURT:  -- Criminal Information?

2           MR. SMITH:  Yes, ma'am.

3           THE COURT:  All right.

4           All right.  There are a number of motions that are

5    pending.  I just want to make sure I clear up the record on this.

6           I think motions one sixty -- Documents 164, 167, and 168:

7    164 is a Motion for Reassignment of Counsel, motion --

8    Document 167 is a Motion to Recuse me as the judge; and

9    Document 168 is another Petition for Writ of Habeas Corpus.

10          All of these were filed by Mr. Schuett personally, not by

11   his counsel.  And so I'm going to deny all of these under Local

12   Rule IA 10-6(a) that states that a party who has appeared by

13   counsel cannot while represented appear or act in his own case.

14          And Mr. Schuett and I have discussed this repeatedly.

15   And I have reminded him of this in Documents 28, 38, 54, 58, 85,

16   91, 141, 152, 153, and 169.

17          And I've also --

18       (Attorney-client discussion.)

19          THE COURT:  -- explained that habeas relief is not --

20       (Attorney-client discussion.)

21          THE COURT:  -- available in a criminal prosecution.  I

22   explained that in Documents 116, 153 --

23       (Attorney-client discussion.)

24          THE COURT:  -- and 169.  And so I also deny the latest

25   habeas petition, which was Document 168, on that basis as well.

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1          So I think that that resolves any pending --

2          THE DEFENDANT:  Uh, ma'am --

3          THE COURT:  -- motions.

4          THE DEFENDANT:  -- there was one other one that you did

5   grant me a limited -- a -- I don't know what it was.  It had

6   somethin' to do with the immanent danger I filed against CCA,

7   about the medical thing up there.  You give me -- you said I could

8   file some kind of a -- it was in one of the -- in fact, I got the

9   order, I think it was, on the 27th of March.

10          THE COURT:  Was it in this case or one of your other

11  cases?

12          THE DEFENDANT:  Um...

13          THE COURT:  It might have been --

14          THE DEFENDANT:  No.

15          THE COURT:  -- in one of --

16          THE DEFENDANT:  I think --

17          THE COURT:  -- your civil --

18          THE DEFENDANT:  -- it was --

19          THE COURT:  -- cases?

20          THE DEFENDANT:  -- 16- -- 1645, I think, was the -- it

21  was on six -- uh, two --

22          THE COURT:  Yeah.  It's in the civil?

23          COURTROOM ADMINISTRATOR:  Civil case.

24          THE COURT:  It's in the --

25          THE DEFENDANT:  Yeah, 2:14-1645 --

—— 2:13-cr-364-JAD-GWF - April 7, 2015 ——

1         THE COURT:  Okay.

2         THE DEFENDANT:  -- you said I could file a -- some kind

3  of a -- for, um, uh, a petition for -- I think for an injunction

4  or somethin' I think like that.  I'm not too sure.

5         THE COURT:  An amended complaint or something like that?

6         THE DEFENDANT:  Yeah.  It was related to 1645, that

7  Complaint that you did dismiss, but you didn't give me

8  authorization where I could file a, uh --

9         THE COURT:  I see.  All right.

10         So that is in one of the pending civil cases that you --

11         THE DEFENDANT:  Right.

12         THE COURT:  -- have.

13         So I think with respect to -- and I'll take a look at

14  that -- but I think -- with respect to the record in this criminal

15  case, I think that resolves all of the pending motions at this

16  point.

17         Donna, does that --

18         THE DEFENDANT:  Yes, ma'am --

19         THE COURT:  -- appear --

20         THE DEFENDANT:  -- it does.

21         THE COURT:  -- to be the case?

22         COURTROOM ADMINISTRATOR:  Yes, Your Honor, it does.

23         THE DEFENDANT:  Except some of my medical issues, current

24  ones anyhow.

25         THE COURT:  And I see that we have Marshal Carpenter here

─────── 2:13-cr-364-JAD-GWF - April 7, 2015 ───────

1  today.  I just wanted to see if there was something that we

2  want -- we needed -- anything else that we need to address?

3          MR. SMITH:  I don't --

4          THE DEFENDANT:  Yeah.

5          MR. SMITH:  -- believe so, ma'am.  I had just asked --

6          THE DEFENDANT:  Get me --

7          MR. SMITH:  -- Marshal --

8          THE DEFENDANT:  -- outta --

9          MR. SMITH:  -- Carpenter --

10         THE DEFENDANT:  -- here.

11         MR. SMITH:  -- to come in case there were some questions

12  that Mr. Schuett had or --

13         THE DEFENDANT:  Get me outta here...

14         MR. SMITH:  -- questions that the Court --

15      (Attorney-client discussion.)

16         MR. SMITH:  -- may have had based on statements that

17  Mr. Schuett made.  But I don't see any need for him to say

18  anything at this point.

19         MS. LEVY:  No.  Thank you, Your Honor.

20         THE COURT:  All right.

21         We don't need anything further then, Ms. Levy?

22         MS. LEVY:  No.  Thank you, Your Honor.

23         THE COURT:  All right.  Thank you very much.

24         MS. LEVY:  Thank you.

25         THE COURT:  All right.  We are adjourned.

─── 2:13-cr-364-JAD-GWF - April 7, 2015 ───

1          Mr. Schuett, I wish you the best of luck, sir.  Okay?

2          THE DEFENDANT:  Thank you.

3          THE COURT:  You take care of yourself.

4          THE DEFENDANT:  Um-hum.

5      (Attorney-client discussion.)

6      (Proceedings concluded at 11:40 a.m.)

7                          --oOo--

8                  COURT REPORTER'S CERTIFICATE

9

10         I, FELICIA RENE ZABIN, Official Court Reporter, United

11    States District Court, District of Nevada, Las Vegas, Nevada, do

12    hereby certify that pursuant to Section 753, Title 28, United

13    States Code, the foregoing is a true, complete, and correct

14    transcript of the proceedings had in connection with the

15    above-entitled matter.

16

17    DATED:  July 3, 2015

18                              /s/ **Felicia Rene Zabin**
                          FELICIA RENE ZABIN, RPR, CCR NO. 478
19

20

21

22

23

24

25